IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARCELINA MARTINEZ and
GILBERT ROMERO,

    Plaintiffs,

v.                                                                                          Civ. 13cv922 RHS/WPL

JULIAN GONZALES, et al.

    Defendants.

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

THIS MATTER is before the Court on the Motion for Judgment on the Pleadings filed March 21, 2014 (Doc. 75) by the County Defendants[1]. Plaintiffs filed their Response (Doc. 82) on April 4, 2014. Defendants filed their Reply (Doc. 86) on April 11, 2014. The Court having considered the Motion (Doc. 75), Response (Doc. 82), Reply (Doc.86), the filings on the record in the above-captioned cause and applicable legal authority, finds that the Motion is well-taken and should be granted.

### BACKGROUND

Plaintiffs Marcelina Martinez and Gilbert Romero's Complaint alleges ten (10) claims including civil rights violations against seventeen (17) defendants, however, only two (2) defendants remain, Ernest Garcia and Santa Fe County. Plaintiffs' claims arise from a dispute regarding the construction of a building and, permitting issues which resulted in the filing of a criminal complaint in the Santa Fe County Magistrate Court of the State of New Mexico (Doc. 29, 8-11). Plaintiffs allege that Julian Gonzales and Eloy Griego entered Plaintiffs' real property

---

[1] Plaintiffs filed a Stipulation of Dismissal on May 28/2014 (Doc. 115) voluntarily dismissing Julian Gonzales, Eloy Griego, Penny Ellis-Green, Daniel Mayfield, Robert Garcia, Justin R. Woolf, Fermin Aragon, and Robert Shilling.

without authority or jurisdiction on February 19, 2013 and February 20, 2013, respectively (Doc. 29 at 7).  Plaintiffs argue that this entry was a trespass which violated their civil rights under the Treaty of Guadalupe Hidalgo as the basis of their claim raised in Count 1 of the First Amended Action (Doc. 29 at 29).  Defendants move for dismissal of Count 1 and contend that Plaintiffs' reliance on the Treaty of Guadalupe Hidalgo is misplaced because the Treaty does not provide for a private cause of action (Doc. 75 at ).

## **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 12(c)[2], "[a]ny party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice."  Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. 303, 304 (D.N.M. 2000).  "A motion pursuant to Rule 12(c) is generally treated in the same manner as a motion to dismiss under Rule 12(b)(6)."  Id.  "A court considering a motion for judgment on the pleadings should accept all facts pleaded by the non-moving parties as true and grant all reasonable inferences from the pleadings in favor of the same."  Mata v. Anderson, 760 F.Supp.2d 1068, 1083 (D.N.M. 2009).

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.AS. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).  A complaint fails to state a claim

---

[2] The title of Defendants' Motion appears to seek relief under Fed. R. Civ. P. 12(c), while the text of the Motion seeks relief pursuant to Rule 12(b)(6).

when it makes conclusory allegations of liability without supporting factual content.  See Twombly, 550 U.S. 544; Iqbal, 556 U.S. at 677-78.  A complaint must set forth sufficient facts to raise a plausible inference that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 677-78.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. 556-57.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  Id. (internal quotations omitted).  Furthermore, while the court must accept all the factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678-79.

## ANALYSIS

In the Motion for Judgment on the Pleadings (Doc. 75) Defendants seek dismissal of Count 1 arguing that the Treaty of Guadalupe Hidalgo does not authorize a private right of action.  They further argue that the Treaty does not preclude state and county land use regulations.  Plaintiffs oppose the Motion claiming that the Treaty "was not made under the authority of New Mexico but under the authority of the United States" (Doc. 82 at 6).  Plaintiffs argue that the State and Santa Fe County have no interest in their property and as such cannot regulate Plaintiffs' use of their privately owned land (Doc. 82).

In 1848, the Treaty of Guadalupe Hidalgo formally ended the war between the United States and Mexico.  New Mexico Gamefowl Ass'n, Inc. v. State ex rel. King, 146 N.M. 758, 770 (N.M. App. 2009).  The United States acquired the right to property in all of the public lands of that portion of New Mexico that was ceded to this country."  Chadwick v. Campbell, 115 F.2d 401.  "[P]rivate rights of property within the ceded territory were unaffected by the change in

sovereignty." Id.  Specifically, the Treaty of Guadalupe-Hidalgo provided that property rights under Mexican law would be respected.  Sanchez v. Taylor, 377 F.2d 733, 736 (10th Cir. 1967).  In Montoya v. Tecolote land Grant ex rel. Tecolote Bd. of Trustees, the Court of Appeals provided a general history of the land grant and specifically stated that "the Treaty of Guadalupe Hidalgo was not self-executing. . . [so] Congress established different adjudication systems, by which Mexican landowners were required to demonstrate the legitimacy of their claims under Spanish and Mexican law to have their rights confirmed by the United States."  143 N.M. 413, 414 (N.M. App., 2007).  The Tenth Circuit considered the purpose of the Treaty in determining an action to "quiet title and to cancel and satisfy of record an oil and gas lease" for land that was originally part of a Spanish land grant.  Chadwick v. Campbell, 115 F.2d 401 (10th Cir. 1940).  Plaintiff sought to quiet title to the property that was sold pursuant to a tax deed issued by the Socorro County treasurer for unpaid property taxes.  Id.   The Tenth Circuit reasoned that "[t]he decree establishing and confirming the title in the named persons, their heirs, and assigns, and the patent conveying it to them, as a private grant, are conclusive here in respect to the nature of their title, as between a public or a private grant. Chadwick v. Campbell, 115 F.2d at  404. (citing Tameling v. United States Freehold, etc., Co., 93 U.S. 644 (1876); United States v. Maxwell Land-Grant Co., 121 U.S. 325 (1887); Astiazaran v. Santa Rita Land & Mining Co., 148 U.S. 80 (1893)).  While prevailing authority provides that the Treaty specifically addresses ownership rights originating from land grants, there is nothing in the Treaty addressing regulation and control of land use.

The Supreme Court of the United States has held that the Government has considerable latitude in regulating property rights in ways that may adversely affect the owners. Hodel v. Irving, 481 U.S. 704 (1987) (citing Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S.

470, 491–492 (1987) (where Court upheld the constitutionality of Pennsylvania Subsistence Act); Penn Central Transportation Co. v. New York City, 438 U.S. 104, 125–127 (1978) (where Court upheld application of landmarks preservation law stating that it did not constitute a taking); Goldblatt v. Hempstead, 369 U.S. 590, 592–593 (1962) (upholding lower court judgment that ordinance was a valid exercise of the town's police power).  Similarly, in Hodel v. Virginia Surface Mine and Reclamation Assn, Justice Powell, in his concurrence, stated that "regulation and control of land use . . . are activities normally left to state and local governments. 452 U.S. 264 (1981) (where parties litigated whether the Surface Mining Act constituted a taking.)  Moreover, it is settled law in New Mexico that land constituting a private grant is subject to tax.  State v. Board of Trustees of Town of Las Vegas, 28 N.M. 237, 210 P. 101; Board of Trustees of Town of Tome v. Sedillo, 28 N.M. 53, 210 P. 102; H.N.D. Land Co. v. Suazo, 44 N.M. 547, 105 P.2d 744.

New Mexico statutes authorize counties to enact ordinances for the purpose of safety, health and welfare of any county or its inhabitants. NMSA 1978, § 4-37-1.  Additionally, statutes authorize counties with zoning authority which includes but is not limited to authority to regulate or restrict construction or reconstruction.  NMSA 1978, §§ 3-21-1 et seq.  Pursuant to NMSA 1978, § 4-37-2, privately owned land is subject to county ordinances.  In Cerillos Gravel Products, Inc. v. Board of County Commissioners of Santa Fe County, the New Mexico Supreme Court discusses Santa Fe County's authority to regulate land use and their ability to adopt ordinances which has been "compiled as a unified land development code.  138 N.M. 126 (2005).  Although Cerillos Gravel Products involved a proceeding to revoke a mining permit, the New Mexico Supreme Court examined the statutes and ordinances addressing the County's power to enforce the County's zoning authority.  Id.  The New Mexico Supreme Court held that

the county had statutory authority under the Zoning Act and could choose how to enforce its land use ordinances. Id.

In their Response, Plaintiffs cite various cases to support their argument that the state and county lack authority to regulate private land, namely their land (Doc. 82). All of these cases concern disputes involving title to property not regulation of statutes or ordinances regulating land use. Plaintiffs cite Ainsa v. New Mexico & Arizona R. Co. which is an appeal to the United States Supreme Court from judgment of the Supreme Court of the Territory of Arizona affirming judgment of the District Court of Pima County's refusal to take jurisdiction of a suit to quiet title under a Mexican grant. 175 U.S. 76 (1899) (the Supreme Court discussed perfection of legal title pursuant to the Treaty of Guadalupe Hidalgo and Congress's discharge or delegation of such duty to secure rights under the Treaty). Plaintiffs include six Supreme Court cases cited by Ainsa which resolve issues regarding title to land grant property subsequent to being ceded to the United States. Plaintiffs appear to argue that if a state wanted to claim some interest in private land it should have "done so during patent proceedings" (Doc. 82 at 12). Plaintiffs further contend that New Mexico was unable to assert any such claim because it did not exist at the time of the patent proceedings and therefore, it would not be entitled to regulate land use of any private property. Id. at 12. Plaintiffs rely on a number of cases which include Klais v. Danowski, 129 N.W.2d 414 (Mich., 1964), and Knight v. United Land Ass'n, 142 U.S. 161 (1891) to support their argument that land use ordinances and/or regulations do not apply to their private property. None of these cases concern the applicability of land use ordinances. Many are not binding precedent because they are case law from other states and are otherwise irrelevant because they address title to land not land use regulations. The Supreme Court cases cited by Plaintiffs either analyze property rights of Mexican citizens who owned real property in territory

ceded to the United States by treaty or resolve disputes to the appellate jurisdiction of the Supreme Court over cases commenced in the Court of Private Land Claims that was created by Congress to issue patents confirming title and therefore irrelevant to authority to regulate land use.

The Court finds that Plaintiffs misapprehend the purpose of the Treaty of Guadalupe Hidalgo.  Plaintiffs assert that it precludes state and county enforcement of land use ordinances and regulation of privately owned land.  They argue that if the State of New Mexico or Santa Fe County wanted to claim an interest in Plaintiffs' land, the state and county should have done so during the patent proceedings (Doc. 82 at 12).  The legal authority interpreting the language of the Treaty and its purpose yields a different interpretation.  As discussed above, the Treaty ended the war between Mexico and the United States and provided for treatment of land to be ceded to the United States.  Simply stated the Treaty delineates what happens to the private and public property rights of land upon transfer from one sovereign, Mexico, to another sovereign, United States.  Moreover, it allowed existing private property owners to continue to hold title to their private property after the transfer.  As stated above, there is nothing in the Treaty precluding the establishment of land use ordinances and regulations.  The Treaty merely guaranteed that Mexican property owners and their heirs and privies had the same rights as United States citizens owning similar property so that all would be treated equally.  115 F.2d at 405.  Whether a person owns private property that they purchased or private property they inherited through a land grant, they are subject to land use statutes, ordinances, and regulations enacted for the protection of public health, safety, and welfare.  138 NM at 129. (citing NMSA 1978, §§ 3-21-1 to -14 (1965, as amended through 1995)); see also NMSA 1978, §§ 4-37-1 *et seq*.

In light of the foregoing, the Court finds that Plaintiffs fail to state a claim pursuant to the Treaty of Guadalupe Hidalgo, and as such Defendants are entitled to judgment as a matter of law dismissing Count 1.

IT IS THEREFORE ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. 75) is hereby GRANTED and Count 1 of Plaintiffs' First Amended Action (Doc. 29) is dismissed with prejudice.

*Robert Hayes Scott*
_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE