IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARCELINA MARTINEZ and
GILBERT ROMERO,

       **Plaintiffs,**

vs.                                      Civ. No. 13-922 RHS/KK

JULIAN GONZALES, et. al.,

       **Defendants.**

ORDER GRANTING OFFICER ERNEST GARCIA'S
MOTION FOR SUMMARY JUDGMENT AND DISMISSING WITH PREJUDICE

THIS MATTER came before the Court on Defendant Ernest Garcia's Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity (Doc. 122). The Court has considered Defendant Garcia's Motion, together with the Plaintiffs' Response (Doc. 129), Defendant Garcia's Reply (Doc. 132), and the supporting documents and legal authority, and finds that the motion is well-taken and should be granted.

**BACKGROUND**

The Plaintiffs' Amended Complaint alleges ten (10) claims against seventeen (17) defendants. See Amended Complaint, Doc. 29. At this juncture, all of the defendants, except for Defendant Garcia, have been dismissed through either voluntary stipulated dismissals or by court order.[1]

The claims against Defendant Garcia arise from incidents which occurred on July 27, 2013. See Doc. 29. Defendant Garcia, a patrolman for the New Mexico State Police, was on-

---

[1] See Stipulation of Dismissal (Doc. 121) and Order (Doc. 120) dismissing Santa Fe County; Notice of Voluntary Dismissal (Doc. 115)(dismissing Julian Gonzales, Eloy Griego, Penny Ellis-Green, Daniel Mayfield, Robert Garcia, Justin R. Woolf, Fermin Aragon, and Robert Shilling); Order (Doc. 103) dismissing Rachel Brown and Stephen Ross; Order (Doc. 104) dismissing Brian Nissen and Edward G. Webb Jr.; Order (Doc. 92) dismissing Judge Miera; Order (Doc. 91) dismissing Mino's Towing; Order (Doc. 81) dismissing Phillip Sanchez.

duty when he conducted a traffic stop of Plaintiff Martinez's vehicle.  After running a license-plate inquiry, Defendant Garcia discovered that Plaintiff Martinez, the driver and registered owner of the subject vehicle, had an outstanding bench warrant for her arrest.  When Defendant Garcia asked Plaintiff Martinez to exit the vehicle, a confrontation immediately ensued.  Plaintiff Martinez was arrested for the outstanding warrant and charged with obstruction and concealing her identity.  Plaintiff Romero arrived at the scene of the traffic stop and was also arrested for obstruction, concealing his identity, and aggravated driving while under the influence.

As a result of these events, the Plaintiffs asserted the following claims against Defendant Garcia in their Amended Complaint: (Count 2) unlawful traffic stop, excessive force, arrest, and incarceration in violation of constitutional rights; (Count 3) unlawful taking of private property; (Count 4) unlawful detention, excessive bail, and cruel and unusual punishment; conspiracy (Count 5); and neglecting to prevent the commission of a violation of constitutional rights (Count 6).  Defendant Garcia now seeks summary judgment on all claims.

### LEGAL STANDARD FOR SUMMARY JUDGMENT

As the Parties are aware by now, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The parties may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable, such that a jury could reasonably return a verdict in favor of the non-moving party.  Id. at 249-50

(internal citations omitted).  The Court may only consider admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

## LEGAL STANDARD FOR ABSOLUTE AND QUALIFIED IMMUNITY

Defendant Garcia argues in the present motion that he is entitled to summary judgment because the undisputed material facts demonstrate he is entitled to either absolute or qualified immunity.  "The Supreme Court has recognized the defense of absolute immunity from civil rights suits in several well-established contexts involving the judicial process."  Snell v. Tunnell, 920 F.2d 673, 686 (10th Cir. 1990).  A judge acting in his judicial capacity is absolutely immune from such suits.  Stump v. Sparkman, 435 U.S. 349, 356–57 (1978); Pierson v. Ray, 386 U.S. 547, 553–55 (1967).  Similarly, the officials who are assigned to carry out a judge's orders are entitled to absolute "quasi-judicial" immunity.  See Valdez v. City & Cnty. of Denver, 878 F.2d 1285, 1288 (10th Cir. 1989).  "The rationale for according absolute immunity in the civil rights context is to incorporate traditional common law immunities and to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation."  Snell, 920 at 686-87.

Qualified immunity is a defense which requires a more fact-intensive inquiry than absolute immunity.  Qualified immunity is aimed to "protect officials who are required to exercise their discretion and the related public interests in encouraging the vigorous exercise of official authority."  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(internal citations omitted).  When a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to establish undisputed material facts which demonstrate "that the defendant's actions violated a constitutional or statutory right."  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir.

3

2001)(internal citations omitted).  If the plaintiff satisfies this first burden, he or she must then

demonstrate "that the right at issue was clearly established at the time of the defendant's

unlawful conduct."  Id.  If either prong is not established, the defendant is entitled to qualified

immunity."  Albright v. Rodriguez, 52 F.3d 1531, 1535 (10th Cir. 1995).

## ANALYSIS

The Court has reviewed and considered all of Defendant Garcia's proposed undisputed,

material facts, as well as the Plaintiffs' itemized responses to each fact, in a light most favorable

to the Plaintiffs.  The Court notes, however, that Defendant Garcia has submitted a video tape as

an exhibit ("Defendant's Exhibit B") to his motion.  This videotape captures the majority of the

incident at issue.  Therefore, where the Parties offer two different versions of facts, the Court

will view "the facts in the light depicted by the videotape."  Scott v. Harris, 550 U.S. 372, 381

(2007)(holding that "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment").

## I.
### Defendant Garcia's Traffic Stop and Arrest of Plaintiff Martinez

Defendant Garcia argues that the arrest of Plaintiff Martinez was lawful because he was

acting pursuant to a facially valid warrant.  See Doc. 122 at 13-14.  The undisputed material facts

demonstrate that Defendant Garcia conducted a traffic stop of Plaintiff Martinez's vehicle after

running a license plate check and finding that an outstanding warrant was issued for her arrest.[2]

See Doc. 122 at 5, ¶ 3; 122-1, Defendant's Exhibit A, Affidavit of Ernest Garcia; see also

Defendant's Ex. B.  The warrant was the same warrant which two of the other formerly named

---

[2] Although the Plaintiffs assert this fact is disputed, they offer no evidence to support their claim that Defendant
Garcia did not run a license-plate check prior to conducting the traffic stop.  Defendant Garcia, conversely, offers his
sworn statement in support of this fact.  Pursuant to Rule 56(c)(1), the Plaintiffs have therefore failed to create a
genuine issue of material fact as to paragraph 3.

defendants in this case, Nissan and Webb, had unsuccessfully attempted to execute at Plaintiff Martinez's property approximately one-month prior.  Compare Defendant's Exhibit A-1 to Nissan and Webb's Motion for Summary Judgment (Doc. 68) and Judge Miera's Motion for Summary Judgment (Doc. 50), Exhibit A-5.   After stopping Plaintiff Martinez's vehicle, Defendant Garcia ordered Plaintiff Martinez to exit the vehicle and repeatedly advised her that he had a warrant.  See Defendant's Ex. B.

Defendant Garcia cites to this Court's previous order (Doc. 104) in which the Court held that former Defendants Webb and Nissan "were acting pursuant to a facially valid bench warrant issued by Judge Miera . . . and, as such, are entitled to absolute immunity."  See Doc. 122 at 3-4 (citing Order Granting Summary Judgment of the Basis of Immunity (Doc. 104)).  Accordingly, Defendant Garcia asserts that this finding constitutes the "law of the case" pursuant to U.S. Supreme Court law.  See Doc. 122 at 14.  Defendant Garcia argues that because he executed the same facially-valid warrant as Nissan and Webb, he is also entitled to absolute immunity for the arrest pursuant to that the warrant.  Id.

The Court agrees with the arguments and authorities propounded by Defendant Garcia. The Court has already held that the warrant at issue in this case was facially-valid, and the Plaintiffs have not offered any new facts in their Response to the instant motion which would persuade the Court to change its ruling.  Therefore, Defendant Garcia's actions in executing that warrant are entitled to absolute immunity.  See Valdez v. City & County of Denver, 878 F.2d 1285, 1289 (10th Cir. 1989)(holding that officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order).  These actions include the traffic stop and the arrest of Plaintiff Martinez pursuant to the bench warrant.

Because the Court finds that the traffic stop and arrest of Plaintiff Martinez were reasonable, the Court need not consider the additional criminal charges which were brought as a result of the events that occurred after Plaintiff Martinez was lawfully detained.  The question of whether or not these charges were lawful and based on probable cause is an issue for the underlying criminal proceedings.

## II.
## Use of Force on Plaintiff Martinez

The Court finds that the Plaintiffs' remaining allegations do not fall within the scope of absolute immunity.  The use of force claims and the arrest of Plaintiff Romero were not authorized pursuant to the facially-valid court order.  The Court will therefore analyze the remaining claims pursuant to the qualified immunity analysis.

With respect to the excessive force claims by Plaintiff Martinez, the Court finds that the use of force was objectively reasonable and there was no violation of Plaintiff Martinez's rights in this respect. The Court assesses the reasonableness of the officer's conduct "from the perspective of a reasonable officer on the scene," acknowledging that the officer may be "forced to make split-second judgments."  Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001)(quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).  The claimant must show that the force used was more than reasonably necessary and evidence of an actual injury that is not de minimis.  Cortez v. McCauley, 478 F.3d 1108, 1129 (10th Cir. 2007).  One of the factors used to determine the objective reasonableness of the use of force is the suspect's efforts to resist or evade arrest.  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1314 (10th Cir. 2002).

The record in this case demonstrates that Defendant Garcia ordered Plaintiff Martinez to exit the vehicle approximately seventeen times. See Doc. 122, 129 for Undisputed Material Fact ("UMF") No. 5; see also Defendant's Exhibit B.  He also repeatedly advised Plaintiff Martinez

that he had a warrant for her arrest, and even verified the warrant before taking further action to remove Plaintiff Martinez from the vehicle.  See Doc. 122, 129 for UMF No. 7; see also Defendant's Ex. B.   Plaintiff Martinez did not comply with any of Defendant Garcia's commands.  Id.  Instead, Plaintiff Martinez tried to provide a memorandum of legal authority, which she apparently had been carrying with her in her vehicle. See Plaintiffs' Exhibit A; see also Defendant's Ex. B.

Defendant Garcia unlocked Plaintiff Martinez's door and attempted to physically pull her from the vehicle; he stopped pulling when Plaintiff Martinez resisted.  See Doc. 122, 129 UMF No. 6; see also Defendant's Exhibit B.  Plaintiff Martinez only exited the vehicle and submitted to the arrest when Defendant Garcia warned Plaintiff Martinez that he would use his Taser.  Id. Defendant Garcia was then able to place Plaintiff Martinez in handcuffs.  Id.

During the course of the arrest, Plaintiff Martinez repeatedly advised Defendant Garcia that there would be a major lawsuit against him, and that she would "own all [his] property."  Ex. B 6:40, 7:03.  Despite repeatedly asking Defendant Garcia why she was under arrest and whether he had a warrant, Plaintiff Martinez later revealed that she already knew about the warrant by telling Defendant Garcia: "Do you know what it's for? It's for unpermitted development." Ex. B at 11:28.

Based on the undisputed facts before the Court, the Court finds that Defendant Garcia provided Plaintiff Martinez with multiple opportunities to comply with Defendant Garcia's verbal directions before he resorted to physical force.  It is readily apparent from the videotape and the record that Defendant Garcia attempted to conduct a peaceful arrest.  Despite his efforts and lawful purpose in detaining Plaintiff Martinez, Plaintiff Martinez remained highly resistant and uncooperative throughout the entire incident.  She was armed with her memorandum of legal

authority and prepared to challenge any officer who tried to arrest her pursuant to her outstanding warrant.

As a result of Plaintiff Martinez's incessant refusal to exit the vehicle or to comply with any orders from Defendant Garcia, Defendant Garcia was left with little choice but to use physical force to unlock the car door, attempt to pull Plaintiff Martinez from the vehicle, and then place her in handcuffs. The Court finds that this use of force was reasonably necessary under these circumstances.

Further, the Court finds that Plaintiff Martinez has not demonstrated that her injuries were more than de minimis. Plaintiff Martinez provides a declaration and photographs that Defendant Garcia's use of force and the handcuffs caused bruising on her arms and wrists. The injuries are insufficient as a matter of law to demonstrate excessive force under these circumstances. See, e.g., Cortez, 478 F.3d at 1129 (holding that evidence that handcuffs left red marks that were visible for days afterward was insufficient, as a matter of law, to support an excessive force claim).

The Court holds that Defendant Garcia's use of force was necessary and objectively reasonable in light of Plaintiff Martinez's unjustifiable resistance. Therefore, Defendant Garcia did not violate Plaintiff Martinez's right to be free from excessive force, and he is entitled to qualified immunity on this claim.

### III.
### Arrest and Use of Force of Plaintiff Romero

The record demonstrates that Defendant Garcia also acted reasonably with respect to his arrest of Plaintiff Romero. Plaintiff Romero arrived at the scene of the traffic stop after Plaintiff Martinez had been detained. See Doc. 122, 129 UMF No. 12; see also Defendant's Exhibit B. Plaintiff Romero repeatedly requested to see a copy of the bench warrant. Id. Defendant Garcia

ordered Plaintiff Romero to leave numerous times and warned that Plaintiff Romero would be arrested for obstruction if he did not leave the scene.  Id.  Despite these warnings, Plaintiff Romero continued to challenge Defendant Garcia's authority and requested to see the warrant. Id.  Eventually, Defendant Garcia ordered Plaintiff Romero to place his hands behind his back. See Doc. 122, 129, UMF No. 13; see also Defendant's Exhibit B.  He repeated this order ten times, while Plaintiff Romero repeatedly refused and advised that he would leave at that point. Id.  Defendant Garcia then used his Taser in dry-stun mode.  See Defendant's Ex. A.  Plaintiff Romero continued to resist and pull away from Defendant Garcia.  Id.  Defendant Garcia then used the Taser gun.  Id.  Plaintiff Romero fell to the ground and Defendant Garcia placed handcuffs on Plaintiff Romero.  Id.

New Mexico law defines resisting, evading, or obstructing an officer is defined as "knowingly obstructing, resisting or opposing any officer of [New Mexico] . . . serving or attempting to serve or execute any process or any rule or order of any of the courts of [New Mexico]."  NMSA 1978, § 30-22-1.  Here, Plaintiff Romero actively obstructed Defendant Garcia's execution of the bench warrant for Plaintiff Martinez.  He interfered with Defendant Garcia's duties by refusing to leave the scene and confronting Defendant Garcia.  Defendant Garcia was justified in placing Plaintiff Romero under arrest after giving him multiple opportunities to leave without incident.

With respect to the use of force, the Court turns to Casey v. City of Federal Heights for guidance.  See 509 F.3d 1278 (10th Cir. 2007).  The suspect in that case was arrested for two, non-violent misdemeanors.  The officer who arrested the suspect initiated the use of force by using an arm-lock, a tackling, a Tasering, and a beating.  Casey, 509 F.3d at 1282.  The Court found this use of force to be excessive under the Graham factors.  Id.  The Court held that the

offender in that case had committed very minor, nonviolent misdemeanors; that he did not pose any danger to society; and that he did not actively resist arrest or attempt to evade arrest by flight. Id. at 1281-82. Further, the officer never advised the offender that he was under arrest, nor did he give the offender an opportunity "submit peacefully to an arrest." Id. at 1282.

Here, the Court finds that the crime of obstruction was minor, as it was in Casey. With respect to the second factor in Graham, the Court notes that Defendant Garcia was the only officer at the remote scene of the traffic stop when Plaintiff Romero arrived in an agitated state. Plaintiff Romero demonstrated a confrontational attitude and blatant disregard for Defendant Garcia's instruction or authority. Under those circumstances, it is reasonable for an officer in Defendant Garcia's situation to be concerned for his safety.

The most distinguishing factor between this case and Casey, however, is the undisputed fact that Defendant Garcia repeatedly gave Plaintiff Romero the opportunity to not only leave the scene, but also to peacefully submit to the arrest. It is evident from the video that Plaintiff Romero, at no point during the incident, attempted to comply with Defendant Garcia's orders. Defendant Garcia only used the Taser after multiple failed attempts to verbally order Plaintiff Romero to place his hands behind his back. Defendant Garcia's use of force was therefore objectively reasonable under these circumstances.

Because the Court finds the Defendant Garcia's arrest of Plaintiff Romero was reasonable, the Court will not consider the other two charges which arose while Plaintiff Romero was in custody pursuant to a valid arrest. As explained above, whether or not these charges were lawful is a matter to be determined for the underlying criminal proceedings.

## III.
## Unlawful Search and Seizure of Property

The final issue which is relevant to the Plaintiffs' claims against Defendant Garcia is the alleged unlawful search, seizure, and deprivation of Plaintiff Romero's property.  Although neither Party references facts related to the Plaintiff's claims of unlawful search and seizure of personal property in the briefing at issue, Plaintiff Martinez provides a declaration in support of her response which discusses the facts surrounding these claims.  See Doc. 129-1, Plaintiffs' Exhibit A.  The Court elects to consider this declaration as evidence in its decision.  See Fed. R. Civ. P. 56(e)(3)(providing that "[t]he court need consider only the cited materials, but it may consider other materials in the record").

Plaintiff Martinez submits in her declaration that the Plaintiffs were transported to the police department.  See Doc. 129-1 at 5, ¶ 20. While at the station, Defendant Garcia searched Plaintiff Romero's person for weapons and pulled out Defendant Romero's wallet and his driver's license.  Id.  The Plaintiffs submit that this search and seizure was unlawful.  Id.

The Court finds that this search and seizure was reasonable as a search incident to lawful arrest.  The U.S. Supreme Court has held that

> [a] custodial arrest of a suspect based on probable cause is a reasonable intrusion
> under the Fourth Amendment; that intrusion being lawful, a search incident to the
> arrest requires no additional justification. It is the fact of the lawful arrest which
> establishes the authority to search, and . . . in the case of a lawful custodial arrest
> a full search of the person is not only an exception to the warrant requirement of
> the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

United States v. Robinson, 414 U.S. 218, 235, 94 S. Ct. 467, 477, 38 L. Ed. 2d 427 (1973). Therefore, because the Court holds that Defendant Garcia's arrest of the Plaintiffs was lawful, he was entitled to conduct a full search of the Plaintiffs' person.

**CONCLUSION**

Based on the foregoing reasons and the clear records in this case, the Court finds that Defendant Garcia is entitled to either absolute immunity or qualified immunity on all claims against him.  Specifically, with respect to the claims in Count 2 regarding unlawful traffic stop and arrest of Plaintiff Martinez, the Court holds that the traffic stop and arrest were conducted pursuant to a facially-valid warrant, and Defendant Garcia is therefore entitled to absolute immunity on these claims.

With respect to the excessive force and unlawful arrest claims in Count 2, the Court holds that Defendant Garcia acted reasonably in all respects.  Accordingly, Defendant Garcia has not committed a violation of these constitutional rights alleged in Count 2, entitling him to the defense of qualified immunity.

The Court holds that the search and seizure of Plaintiff Romero's person was conducted incident to the lawful arrest.  Accordingly, Defendant Garcia has not committed a constitutional violation for unlawful taking of property, as alleged in Count 3, and is entitled to qualified immunity on this Count.  Counts 4 and 6 revolve around the same allegations of culpable conduct by Defendant Garcia, and are therefore unable to withstand the defense of qualified immunity, as well.

Count 5 contains allegations of conspiracy between Defendant Garcia and the remaining defendants to conduct an unlawful traffic stop.  Because all other defendants have been dismissed at this stage and the Court has found the traffic stop to be lawful, this claim fails as a matter of law.

In sum, the Court finds that Defendant Garcia is entitled to summary judgment, in Defendant's favor, on all counts.  Because Defendant Garcia is the only remaining defendant in this case, this case will be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that summary judgment is hereby GRANTED in favor of Defendant Garcia on all counts and, there being no remaining issues before the Court, this case is hereby DISMISSED WITH PREJUDICE.

Robert Hayes Scott

_____
ROBERT HAYES SCOTT
U.S. MAGISTRATE JUDGE